**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| MARY PUCKETT, | ) | 3:03-CV-0327-ECR (VPC) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| PARK PLACE ENTERTAINMENT, | ) | |
| CORP., a Delaware corporation | ) | |
| d.b.a. RENO HILTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

We now consider Defendant Park Place Entertainment, Corp's[1] ("Defendant" or "Caesar's") Motion for Summary Judgment (#63), which was filed on April 8, 2005. Plaintiff Mary Puckett ("Plaintiff") filed an opposition (#67) on May 6, 2005, to which Defendant replied (#72) on June 10, 2005.

---

[1] Defendant asserts its proper name is Caesars Entertainment, Inc., and thus will be referred to as "Caesar's" or "Defendant" herein.

**BACKGROUND**

Plaintiff has sued Defendant for alleged violations of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. §§ 12101 *et seq*, filing her original complaint (#2) on June 20, 2003. After multiple motions to dismiss, Plaintiff filed a fourth amended complaint (#35) on September 29, 2004.

The following facts are taken in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff is a cocktail waitress at the Hilton's Racebook. (Pl.'s Opp. (#67), Ex. 1 at 10.) Plaintiff went on a medical leave of absence from May 11, 2001, until November 11, 2001, due to a thoracic strain. (Def.'s Mot. (#63), Ex. G.) In the process of being treated for this injury, Plaintiff was diagnosed with multiple sclerosis ("MS"). (Id.)

From 2001 until at least June of 2003, Plaintiff underwent extensive medical evaluations to determine whether and to what extent she could return to work. (See id., Ex. C.) Many of these evaluations were initiated by Defendant. While the exact diagnoses and recommendations varied a bit throughout the period, they generally noted Plaintiff's fatigue, overheating, numbness, and difficulties with carrying while using her left arm. (Id.) A June 2, 2003, letter from Dr. Louie appears to be the latest summation of Plaintiff's injuries, based on the medical evaluations. It states, "I am releasing Ms. Puckett back to work full time at full duty to her usual occupation as a cocktail waitress with the exception that she should not carry anything in her left arm as

2

this action has consistently reproduced symptoms of upper back pain and leg numbness and weakness." (Id.)

Plaintiff requested that Defendant accommodate her disability by allowing her to use a push cart for serving drinks. (Id., Ex. L at 27.) Defendant denied use of a cart. Defendant's representatives claimed the cart would be unworkable in a crowded racebook setting, but did not research the feasibility of a cart. (Id., Dec. of Kurt Wong & Ex. L at 40.)

Plaintiff alleges that Defendant violated the ADA by failing to reasonably accommodate her disability and engage in the interactive process of searching for a reasonable accommodation. (Fourth Am. Compl. (#35).) Defendant moved for summary judgment, claiming that Plaintiff is not disabled, that she both is and is not able to perform her essential job functions, and that her proposed accommodation is unreasonable.

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. Nw Motorcycle Ass'n v. United States Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom "in the light most favorable to the nonmoving party," Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Judgment as a matter of law

3

1  is appropriate where there is no legally sufficient evidentiary
2  basis for a reasonable jury to find for the nonmoving party.  Fed.
3  R. Civ. P. 50(a).

4      The moving party bears the burden of informing the court of
5  the basis for its motion, together with evidence demonstrating the
6  absence of any genuine issue of material fact.  Celotex Corp. v.
7  Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met
8  its burden, the party opposing the motion may not rest upon mere
9  allegations or denials in the pleadings, but must set forth
10 specific facts showing that there exists a genuine issue for trial.
11 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
12 Although the parties may submit evidence in an inadmissible form--
13 namely, depositions, admissions, interrogatory answers, and
14 affidavits--only evidence which might be admissible at trial may be
15 considered by a trial court in ruling on a motion for summary
16 judgment.  Fed. R. Civ. P. 56(c); Beyene v. Coleman Security
17 Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

18      In deciding whether to grant summary judgment, a court must
19 take three necessary steps: (1) it must determine whether a fact is
20 material; (2) it must determine whether there exists a genuine
21 issue for the trier of fact, as determined by the documents
22 submitted to the court; and (3) it must consider that evidence in
23 light of the appropriate standard of proof.  Anderson, 477 U.S. at
24 248.  Summary Judgment is not proper if material factual issues
25 exist for trial.  B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260,
26 1264 (9th Cir. 1999).  "As to materiality, only disputes over facts
27 that might affect the outcome of the suit under the governing law

28                                 4

1  will properly preclude the entry of summary judgment." Anderson,
2  477 U.S. at 248.  Disputes over irrelevant or unnecessary facts
3  should not be considered.  Id.  Where there is a complete failure
4  of proof on an essential element of the nonmoving party's case, all
5  other facts become immaterial, and the moving party is entitled to
6  judgment as a matter of law.  Celotex, 477 U.S. at 323.  Summary
7  judgment is not a disfavored procedural shortcut, but rather an
8  integral part of the federal rules as a whole.  Id.

**II.  Disability under the ADA**

The ADA makes it unlawful for covered entities, including private employers, to discriminate against qualified individuals with disabilities.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 477 (1999).  The statute provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Discrimination, under the ADA, includes: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).

### A. Definition of Disability

The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The inquiry into whether a person is disabled under the first part of this definition involves a three-part analysis: (1) does the individual have a physical or mental impairment; (2) does such impairment limit one or more of the major life activities of the individual; and (3) is such limitation substantial? See 42 U.S.C. § 12102(2)(A); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194-95 (2002).

### 1. Impairment

Plaintiff's MS qualifies as a physical impairment for purposes of the ADA. See Braunling v. Countrywide Home Loans Inc., 220 F.3d 1154, 1157 (9th Cir. 2000)(finding the plaintiff disabled under the ADA where she suffered "some of the debilitating consequences of [MS] such as poor ambulation ability and extreme fatigue"); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1174 (10th Cir. 1999) (finding plaintiff disabled where MS caused "numbness, pain, fatigue, cramps, blurred vision, fainting spells, forgetfulness, loss of balance and incontinence"). Furthermore, MS is included in a "representative list of disorders and conditions constituting physical impairments" accompanying the ADA regulations. Bragdon v. Abbott, 524 U.S. 624, 633 (1998) (citing 42 Fed. Reg. 22685 (1977). The parties do not dispute that Plaintiff experiences numbness and

6

fatigue as a result of her MS and thus, like the Plaintiff in Braunling, her MS constitutes an impairment.

However, it is disputed as to whether her MS causes the specific impairment allegedly affecting Plaintiff's ability to work without accommodation: her restricted ability to carry and lift. While the 2003 doctor's notes indicate that Plaintiff is restricted in her ability to carry, they specify that such restriction is probably not related to her MS, but rather to an industrial injury. Nevertheless, the fact that Plaintiff is unable to carry or lift certain amounts or in a certain manner is an impairment, regardless of whether the cause is MS or an industrial injury. Thus, we find that Plaintiff has met her burden of showing an impairment.

### 2. Major Life Activities

"Major life activities" are defined under the ADA regulations as "those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R Pt. 1630, App. § 1630.2(I).[2]  The Ninth Circuit has found the symptoms of MS to affect major life activities. Braunling, 220 F.3d at 1157. In addition, Plaintiff has provided evidence that she is limited in the major life activities of lifting and carrying.[3]

---

[2] It is unclear what amount of deference courts should give the EEOC's regulations, however, we can at least look to them for guidance. See Sutton, 529 U.S. at 479-80.

[3] Carrying and lifting are the specific limitations for which Plaintiff seeks accommodation. Although Plaintiff's MS may not be their cause, we will analyze Plaintiff's disability status for both her MS and for her lifting and carrying restrictions as potentially separate from her MS. However, ultimately, only her lifting and carrying restrictions will be the focus of the reasonable

7

Lifting has been recognized as a major life activity by both the Ninth Circuit and the ADA's regulations.  See Thompson v. Holy Family Hosp., 121 F.3d 537, 539 (9th Cir. 1997) (citing 29 C.F.R. Pt. 1630, App. § 1630.2(I) (1996)).  While the regulations do not specifically mention carrying, they specify that the list "is not exhaustive."  29 C.F.R. Pt. 1630, App. § 1630.2(I).  We see no reason to find that "carrying" fits the ADA definition any less so than "lifting" does, and thus find that both lifting and carrying are major life activities under the ADA.  The next inquiry, then, is whether Plaintiff is substantially limited in the major life activities of lifting or carrying.

### 3.  **Substantial Limitation**

A person is substantially limited if she is "unable to perform a major life activity that the average person in the general population can perform," or is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).  Factors that may be considered in determining whether a limitation or impairment is substantial include: "(I) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or

---

accommodation analysis of Part II.B.

8

long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. at § 1630.2(j)(2).

The Ninth Circuit has found that the general symptoms of MS are substantially limiting. Braunling, 220 F.3d at 1157. As for lifting limitations, the Ninth Circuit has found that a restriction "from lifting more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day" was not "substantially limiting" by law. Thompson v. Holy Family Hospital, 121 F.3d 537, 540 (9th Cir. 1997). Thus, while the general symptoms Plaintiff experiences from her MS are substantially limiting in the Ninth Circuit, whether or not her lifting and carrying restrictions are involves a closer look at her particular facts.

In the case at bar, Plaintiff's doctor prepared a "letter of disability," dated February 5, 2003, recommending that she "not carry anything in her left arm." The letter was based on a review of the functional capacity evaluation performed by Occupational Therapist Peggy Batzloff on December 11, 2002. The evaluation recommended the use of a pushcart as "potentially beneficial" in that it would "minimize left arm carrying and thereby possibly reduce neurological and mechanical stress and left arm numbness that reportedly significantly increase with this type of activity." (#63, Ex. E at DO333.) The report specifically stated that it did not evaluate left arm lifting because "that ability was reportedly tested during a recent evaluation at another facility." (#63, Ex. E at DO331.) The report may be referring to the October 22, 2002, musculoskeletal evaluation prepared by Registered Physical

9

Therapist Linda Wolfe, noting shaking and numbness in tests of Plaintiff carrying 15 and 20 pounds, and recommending that Plaintiff not carry more than 10 pounds in her left arm. Thus, while it is a bit unclear exactly how Dr. Louie reached his determination that Plaintiff not carry anything in her left arm, the combination of the physical evaluations in the record support at least a 10 pound *carrying* restriction and indicate that a pushcart could be beneficial.

It is less clear whether or not Plaintiff has a *lifting* restriction at all. While a January 2002 letter restricted Plaintiff from lifting more than 5 pounds, Dr. Louie's February 2003 letter does not mention lifting, but rather only mentions carrying. O.T. Batzloff did not evaluate Plaintiff's lifting with her left arm, but rather found that left arm "lifting" was addressed in a prior evaluation. However, R.P.T. Wolfe did not mention lifting, but only referred to "carrying." While we do see some distinctions between carrying and lifting, the two tasks are certainly related and appear to be described somewhat interchangeably in the medical records. Thus, we find at least a genuine issue of material fact exists as to whether Plaintiff is restricted in terms of lifting as well as carrying.

In addition, we find a genuine issue of material fact presented as to whether or not Plaintiff is substantially limited in lifting and/or carrying. While it is well-established in this circuit that a twenty-five pound lifting restriction is not substantially limiting, a recommendation that Plaintiff not carry anything at all in her left arm, with attendant restrictions of

10

less than 10 and 5 pounds, certainly appears to be more restrictive, and thus more substantially limiting.  Defendant's video tape evidence that Plaintiff is capable of lifting does not compel a finding for Defendant at this summary judgment stage where the facts must be taken in the light most favorable to the non-moving party, the tapes are subject to interpretation, and Plaintiff has presented medical evidence that she is limited in lifting and carrying.  Furthermore, the fact that Plaintiff's evaluations and restrictions span a period of a few years supports a finding that the duration or impact of the impairment is long term, if not permanent.

Thus, we find that Plaintiff has presented a genuine issue of material fact that she is disabled under the ADA, both in terms of her MS and her lifting/carrying restrictions.  The next inquiry is whether or not she is qualified, with or without reasonable accommodation, to perform the essential functions of her job.

**B.  Qualified Individual**

"[A] 'qualified individual with a disability' [is] 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" Humphrey v. Memorial Hospitals Assn., 239 F.3d 1128, 1133 (9th Cir. 2001) (citing 42 U.S.C. § 12111(8)).

11

Defendant argues both that Plaintiff is unable to perform the essential functions of her position (Reply (#72) 4) and that Plaintiff *is* able to perform the essential functions (Mot. S.J. (#63) 16).  In addition, Defendant argues that Plaintiff's requested accommodation, a push cart for transporting drinks, is unreasonable.

**1.  Essential Job Functions**

Defendant argues that carrying a drink tray is an essential job function of a cocktail waitress.  "Whether a particular function is essential is a factual determination that must be made on a case by case basis."  29 C.F.R. Pt. 1630, § 1630.2(n).  "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).

Defendant has attached an undated job description to its Motion. (#63, Ex. D.)  It describes the "summary job purpose" as "provide beverage service in a friendly, courteous, and timely manner resulting in guest satisfaction."  (Id.)  The description then lists fifteen "basic competencies & abilities," one of which is "[a]bility to grasp, bend, lift and/or carry on (sic) a tray

12

weighing a maximum of 30 lbs. on a continuous schedule." (Id.) Finally, the description lists eight "essential job functions," none of which mentions carrying or lifting.

Based on this job description, we find that there is at least a genuine issue of material fact that Plaintiff could perform the essential functions of her job by using a push cart as opposed to carrying a drink tray. Carrying a tray is not listed as one of the specific "essential job functions" and use of a push cart does not appear to preclude the job's stated summary purpose or the essential job functions. Although carrying a drink tray is listed as one of the basic competencies and abilities, we find that its conspicuous absence from the list of essential job functions raises at least a genuine issue of material fact that the activity is not an essential job function, but rather is the sort of duty that could be altered under the ADA.

**2.   Plaintiff's ability to perform essential job functions**

Having found for purposes of summary judgment that carrying a drink tray is not an essential job function, we must determine whether Plaintiff is able to perform the essential job functions listed in her job description with or without reasonable accommodation.

First, we examine whether Plaintiff is able to perform her essential job functions by carrying a drink tray, i.e. *without*

13

accommodation. Defendant argues that its video footage, surveillance tracking, and Plaintiff's testimony demonstrate she is able to perform her job without the accommodation of a push cart. Plaintiff counters that the video does not demonstrate the pain and fatigue she experiences from carrying a drink tray, and that the doctor's restrictions are compelling evidence that she is medically prohibited from carrying a drink tray in her left arm. Defendant submits a surveillance tracking incident report chronicling Plaintiff repeatedly carrying her tray with her left arm. We find that, when taken in the light most favorable to Plaintiff, this evidence more directly supports an inference that Plaintiff is unable to solely carry her tray with her right arm in the course of her job, than it indicates that she is fully able to perform her job functions without accommodation. When the facts are taken in the light most favorable to Plaintiff, we must remember her doctor's recommendations and assume that any use of her left arm is prohibited. Thus, we find that Plaintiff has presented enough evidence to raise a genuine issue of material fact that she requires an accommodation in order to perform her essential job functions.

**3. Is the requested accommodation reasonable?**

The next inquiry, then, is whether or not Plaintiff's proffered accommodation is reasonable. In order to determine

14

whether an accommodation is reasonable, we engage in a burden-shifting analysis. US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002); Giebeler v. M & B Associates, 343 F.3d 1143, 1156 (9th Cir. 2003). Plaintiff has the initial burden to demonstrate that her proposed accommodation "seems reasonable on its face, *i.e.,* ordinarily or in the run of cases." US Airways, 535 U.S. at 402 (2002); Giebeler, 343 F.3d at 1156 (9th Cir. 2003). "Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate [that] undue hardship" would be caused by the accommodation. US Airways, 535 U.S. at 402 (2002); Giebeler, 343 F.3d at 1156 (9th Cir. 2003). Alternatively, a plaintiff may demonstrate that "the requested 'accommodation' is 'reasonable' on the particular facts." US Airways, 535 U.S. at 405.

   As neither party directly argues to the Supreme Court's burden-shifting standard, we will attempt to extrapolate the appropriate facts and analysis from the record.

   First, we address whether the drink cart is reasonable on its face. Plaintiff claims that it would be feasible to use a drink cart where she works, and that she observed one in the Bingo room. She also testified that the space between tables has enough room for "two people [to] easily walk back and forth." (Pl.'s. Opp. (#67), Ex. 1 10.) We note that drink carts are used in many crowded settings, including airplanes and restaurants. We also

15

take notice of the fact that carts come in many shapes and sizes, and that businesses must leave enough space between tables and furniture to accommodate wheelchairs and abide by fire codes. Thus, we find that a drink cart appears to be facially reasonable in the ordinary run of cases.

Having found that Plaintiff has met its initial burden, we require Defendant to demonstrate that allowing a drink cart would cause it undue hardship.  Defendant primarily has argued that the cart is unreasonable because the bar often gets crowded, table set-ups preclude the passage of the cart, and that Plaintiff would not be able to navigate stairs with the cart.  We find that such reasons fall short of proof of undue hardship.  Defendant must abide by fire codes and disability access laws, and thus adequate space for a small cart should be available by law.  In addition, Defendant is required to provide wheelchair access ramps in public spaces, and so the cart should not provide a problem there.[4] Furthermore, Defendant has not indicated how allowing the cart could cause undue financial hardship.  Thus, we find at least a genuine issue of material fact that Defendant has not met its burden of proving that allowing a drink cart would cause it undue hardship.

---

[4] Defendant has not indicated that the stairways it is concerned about are not in public spaces.

16

Defendant also argues that a drink cart is unreasonable because one of Plaintiff's medical evaluations indicated she should not push more than 20 pounds. We reject this argument because Plaintiff's doctor has not recommended any pushing restrictions and because there is no evidence that a cart has to weigh at least 20 lbs.[5] In addition, one of Plaintiff's medical evaluations recommended use of a push cart. (Def. Mot. (#63), Ex. E at DO333.)

Therefore, we find that Plaintiff has demonstrated at least a genuine issue of material fact that a drink cart would be a reasonable accommodation.

**IT IS, THEREFORE, HEREBY ORDERED** that, as addressed above, Defendant's Motion for Summary Judgment (#63) is **DENIED**.

DATED: This 15th day of March, 2006.

_____
UNITED STATES DISTRICT JUDGE

---

[5] While Defendant did describe one potential cart as weighing 200 lbs, it also cites testimony of Food and Beverage Director Wong, who describes the cart as needing to be "heavy enough to hold the drink tray containing numerous drinks, which could weigh over 15 pounds. Neither of these pieces of evidence support an inference that a cart must weigh at least 20 pounds.

17